WATFORD, Circuit Judge,
dissenting:
Under United States v. Bushyhead, 270 F.3d 905 (9th Cir.2001), Gomez’s statement that he could not speak to officers because his “family will get killed” should have been excluded, even as impeachment evidence. The majority reads Bushyhead as precluding the use of Gomez’s statement only in the government’s case-in-chief, but I do not think the case can be read that narrowly.
The majority does not dispute that, as in Bushyhead, the “entirety” of Gomez’s statement was “an invocation of his right to silence.” Id. at 913. Instead, the majority holds that Bushyhead did not address whether a defendant’s explanation for his refusal to talk can be used for impeachment purposes. It is true that in Bushyhead the government used the contested statement in its case-in-chief rather than as impeachment evidence, but the court’s analysis did not turn on that distinction. To the contrary, Bushyhead based its holding on Doyle v. Ohio, 426 U.S. 610, 619, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), which squarely held that a defendant’s post -Miranda silence may not be used even as impeachment evidence. In expanding the reach of Doyle to include “not merely the silence itself, but the circumstances of that silence as well,” Bushyhead, 270 F.3d at 913, we implicitly carried over the full range of protections Doyle established to this broadened definition of silence.
In my view, this is the only permissible reading of Bushyhead. Except in recounting the sequence of events at trial, the opinion did not discuss when or for what purpose the contested statement was used. See id. at 908-09, 911-12. Nor is there any doubt that we understood Doyle to be a case about impeachment, as evidenced by the several references to impeachment in our summary of, and quotations from, that case. See id. at 912. Because Doyle was the primary authority on which we drew to preclude the use of Bushyhead’s statement at trial, we cannot now plausibly say that Bushyhead left the present issue undecided. Simply put, a defendant’s explanation for his refusal to talk receives protection at all only because Bushyhead equated it with silence itself. If such explanations are treated as the equivalent of silence, there is no authority for providing them with anything less than the full protection Doyle requires.
The majority’s suggestion that this reading of Bushyhead would contradict Doyle is unpersuasive. Doyle recognized a narrow exception permitting the government to use post-Miranda silence to impeach “a defendant who testifies to an exculpatory version of events and claims to have told the police the same version upon arrest.” Doyle, 426 U.S. at 619 n. 11, 96 S.Ct. 2240 (emphasis added). Nothing I have said here about Bushyhead would affect the availability of that exception, which turns on whether the defendant has put in issue what happened at the time of arrest. If Gomez had falsely testified that he made certain statements to the officers, he would have opened the door to the use of his silence, along with the circumstances of that silence, to impeach his account of the interview. Instead, as in Doyle, the im *1133 peachment evidence was used in this case to undermine the credibility of “the exculpatory story” itself. Id. at 620 n. 11, 96 S.Ct. 2240. Thus, applying Bushyhead to preclude such impeachment is fully consistent with Doyle’s reasoning.
The government should not have been permitted to use Gomez’s statement that his “family will get killed” to impeach his claimed lack of knowledge of the drugs in the car. The only other evidence tending to prove Gomez’s knowledge was his status as the car’s sole occupant and expert testimony suggesting that drug trafficking organizations do not typically use unknowing couriers to transport drugs. Because Gomez’s statement was the most compelling evidence against him, I cannot say the error in admitting it was harmless beyond a reasonable doubt. See Neder v. United States, 527 U.S. 1, 15, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999).